# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
April 9, 2024 Session

## LORING JUSTICE v. KIM NELSON, ET AL.

**Appeal from the Chancery Court for Knox County**
No. 198478-3      Melissa Thomas Willis, Chancellor[1]

_____

### No. E2023-00407-COA-R3-CV
_____

Loring Justice ("Justice") filed a complaint against Kim Nelson ("Nelson"); David Valone ("Valone") and the Law Office of David Valone (collectively, "Valone Defendants"); and Martha Meares ("Meares"), and Meares and Associates and/or Meares and Dillard (collectively, "Meares Defendants"), (collectively, "Defendants") in the Chancery Court for Knox County ("the Trial Court"). Justice alleged, *inter alia*, wrongful execution of judgment and abuse of process. Nelson filed a motion to classify Justice's action as an abusive civil action ("ACA") pursuant to Tenn. Code Ann. § 29-41-101, *et seq*. The Trial Court granted Nelson's ACA motion, and Justice appealed. Having reviewed the evidence, we affirm, albeit for somewhat different reasons than provided by the Trial Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which JOHN W. MCCLARTY and KRISTI M. DAVIS, JJ., joined.

Loring E. Justice, Knoxville, Tennessee, Pro Se.

Gregory Brown and G. Alan Rawls, Knoxville, Tennessee, for the appellees, Kim Nelson, David Valone, and the Law Office of David Valone.

William E. Godbold, Chattanooga, Tennessee for the appellees, Martha Meares, Meares and Associates and/or Meares and Dillard, and Paul Dillard.

---

[1] Sitting by interchange.

Jonathan Skrmetti, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; and Mary Ellen Knack, Senior Assistant Attorney General for the appellee, the State of Tennessee.

## OPINION

## <u>Background</u>

On July 25, 2019, Justice filed a complaint against Defendants in the Trial Court. Justice alleged that a judgment had been entered against him on April 11, 2017, in the Roane County Juvenile Court ("Juvenile Court") and that he had posted a "supersedeas or appeal bond" to secure Nelson's judgment pending his appeal. Justice claimed that execution on the judgment was accordingly stayed. Nevertheless, Defendants purportedly "conspired to and did execute on the judgment in contravention of the bond order" by filing a judgment lien on Justice's property at 500 Prescott Way, Knoxville, Tennessee 37919 ("the property"). Justice claimed that he learned of this "improper execution" in 2019 and requested Defendants to remove "the wrongful execution." Defendants refused.

In addition to wrongful execution, Justice raised the following causes of action: (1) extortion, attempted extortion, and conspiracy to commit extortion; (2) conspiracy; and (3) abuse of process and conspiracy to abuse process. Justice requested relief in the form of removal of the allegedly illegal lien from the property's title; compensatory damages in the sum of $400,000; and punitive damages in the sum of $900,000.

In September 2019, Meares Defendants and Valone filed separate motions to dismiss the complaint pursuant to Tennessee Rule of Civil Procedure 12.02(6). These parties noted that Justice's allegations arose from an underlying custody dispute in the Juvenile Court, and the Juvenile Court's 2017 judgments against Justice in the amount of $376,638.90 in attorney's fees and $45,238.85 in discretionary fees. Valone and Meares Defendants argued that Justice was incorrect in his assertion that filing a judgment lien was the same as executing on the judgment.

After Justice was unable to successfully serve Nelson for several months, Nelson waived service of process in June 2020. In July 2020, Nelson filed a motion to dismiss pursuant to Rule 12.02(6), also arguing that recordation of a lien was not execution of the judgment. In August 2020, the Trial Court granted Meares Defendants' motion to dismiss, finding that Justice had failed to state a claim upon which relief could be granted. The Trial Court determined that Defendants' actions did not constitute execution of the judgment. In September 2020, the Trial Court granted Valone's motion to dismiss on the same basis.

- 2 -

On September 21, 2020, Nelson filed a motion to classify Justice's action as an "abusive civil action", pursuant to Tenn. Code Ann. § 29-41-101, *et seq.* Nelson asserted that her relationship with Justice constituted a "civil action party relationship," pursuant to Tenn. Code Ann. § 29-41-101(5), given that they share a child. Nelson explained her history of litigation with Justice and that the Juvenile Court had found that Justice "intentionally manipulated" "litigation in an attempt to 'financially ruin' Ms. Nelson"; threatened to "break Ms. Nelson financially"; was "abusive both physically and psychologically" to Nelson and their child; and that many of Justice's allegations and motions were frivolous and baseless and brought for improper purposes of "harassment, delay and to needlessly increase litigation costs." Nelson noted that the Juvenile Court had entered judgments against Justice in the amount of $376,638.90 in attorney's fees and $45,238.85 in discretionary fees, which she claimed Justice still had not paid. She further explained that this Court had affirmed the Juvenile Court's judgments.[2]

Nelson further alleged that Justice's complaint contained claims and allegations that were not warranted by existing law and that the action was baseless and frivolous. Nelson alleged that Justice brought the suit against her to "exhaust, deplete, impair, and adversely impact" her financial resources. She sought relief in the form of dismissal of Justice's complaint, an award of her reasonable attorney's fees and costs, and prefiling restrictions on Justice for a period not less than 48 months nor more than 72 months pursuant to Tenn. Code Ann. § 29-41-106(b)(3).

On September 23, 2020, Justice filed a motion to alter or amend the orders granting Meares Defendants' and Valone's motions to dismiss and referenced an amended complaint he had filed. The amended complaint is not in the record. Justice filed a notice of voluntary dismissal without prejudice on September 28, 2020. On October 20, 2020, the Trial Court entered an order reflecting his voluntary dismissal.

The Trial Court asked the parties to file briefs addressing whether the Trial Court retained jurisdiction over Nelson's ACA motion given Justice's dismissal. Nelson and Justice filed competing briefs. In addition to contesting the Trial Court's jurisdiction, Justice argued that his action could not constitute an abusive civil action under the statute because the statute requires that the "prior action be 'the same' or similar." According to

---

[2] Nelson also referenced an action filed by Justice in the Circuit Court for Knox County, in which Justice allegedly rehashed the underlying custody litigation. In that case, Justice alleged, *inter alia*, extortion, intentional infliction of emotional distress, tortious interference with parental rights, conspiracy, coercion, and abuse of process. The Circuit Court awarded Defendants sanctions against Justice due to his violation of Tennessee Rule of Civil Procedure 11.02, despite his voluntary nonsuit. The Circuit Court later learned that Justice had filed an identical complaint in the District Court for the Eastern District of Tennessee, and the Circuit Court accordingly vacated its order for lack of jurisdiction. The Circuit Court eventually reinstated its order of sanctions, and this Court affirmed the order in *Justice v. Nelson*, No. E2022-01540-COA-R3-CV, 2023 WL 6532955 (Tenn. Ct. App. Oct. 6, 2023).

Justice, the present action was not the same or similar as the underlying custody case. He also contended that the ACA statutory scheme was unconstitutional and that this issue was currently before the District Court for the Eastern District of Tennessee ("the federal court"). Nelson filed a reply to Justice's response, noting that the federal court had recently concluded, in an order entered on November 24, 2020, that a litigant who asserts a right of relief under the ACA has a counterclaim. She attached the federal court's decision as an exhibit.

The State of Tennessee ("the State") filed a motion to intervene for the limited purpose of defending the constitutionality of Tenn. Code Ann. §§ 29-41-101 to -107. Over the next several months, Nelson and Justice filed multiple briefs addressing Nelson's ACA motion. In one brief filed by Nelson, she included as an exhibit a May 18, 2021 order from the Juvenile Court, in which it concluded that Justice's pending petition for modification of the parenting plan constituted an abusive civil action and that Justice was an abusive civil action plaintiff.

Nelson also attached an order from the Juvenile Court, entered in February 2020, in which the Juvenile Court addressed Justice's motion to alter or amend an order granting judgment of bond. The Juvenile Court noted that Justice had posted an appeal bond to stay the execution of the judgment at issue in the present case, that he had lost the appeal, and that he still had not paid the judgment. Justice argued in his motion that the bond was void and that he had no obligation to make payments because Defendants had violated the stay order by filing the judgment with the Knox County Register of Deeds. In its analysis, the Juvenile Court found the following: "[T]he Stay Order was never violated in the first place. Filing a copy of the Court judgment in the Knox County Register of Deeds does not violate the Court's Stay Order nor does it amount to contempt of court."

On November 2, 2021, Nelson filed a motion for a protective order, asserting that the Trial Court had scheduled an evidentiary hearing for November 12, 2021; that Justice had served her with a notice of deposition on November 2, 2021; and that Justice sought to depose Nelson on November 8, 2021, four days before the hearing. Nelson argued that the notice of deposition was untimely and that it was intended to "annoy, harass, and burden" her and to increase the cost of litigation. After Nelson failed to appear for the deposition, Justice filed a motion for sanctions and to continue the evidentiary hearing. Justice filed the motion a day before the scheduled evidentiary hearing. It was not file stamped until the day of the evidentiary hearing.

The evidentiary hearing on Nelson's ACA motion was held as scheduled on November 12, 2021. Nelson's former appellate counsel, Cecilia Petersen ("Petersen") was the only person to testify. At the close of the hearing, the Trial Court requested that the parties submit their closing arguments in writing no later than December 3, 2021. Justice did not file a written closing argument.

The Trial Court granted Nelson's ACA motion, finding that Justice's complaint was an abusive civil action. The Trial Court's final judgment, however, was not entered until February 17, 2023.[3] In its judgment, the Trial Court addressed Justice's attempt to take Nelson's deposition in the days leading up to the evidentiary hearing. The Trial Court found "that the action of noticing a party to a deposition only a few days prior to a trial that had been scheduled for approximately three months was inappropriate and the argument that everyone was on notice that counsel 'intended' to conduct discovery is not an appropriate argument to obviate responsibility to timely schedule discovery." The Trial Court found that Justice's motion to continue was unreasonable. It denied both his request for a continuance and for sanctions.

The Trial Court also rejected Justice's argument that his voluntary nonsuit deprived it of authority to adjudicate Nelson's motion. With respect to the substance of Nelson's motion, the Trial Court found that Nelson had presented sufficient evidence to create a rebuttable presumption that Justice's complaint was abusive under the ACA statutes. The Trial Court determined that the Juvenile Court's May 2021 ACA order satisfied the requirement of Tenn. Code Ann. § 29-41-105(4), which provides in relevant part:

> At the hearing conducted pursuant to § 29-41-104, evidence of any of the following creates a rebuttable presumption that the civil action is an abusive civil action and that the person filing the action is an abusive civil action plaintiff and prefiling restrictions should be imposed upon the abusive civil action plaintiff: . . . (4) A court of record in another judicial district has determined that a civil action filed against the civil action defendant was an abusive civil action and is under or has been under prefiling restrictions in that judicial district.

Justice failed to rebut the presumption by failing to present testimony or evidence other than the transcript of the ACA hearing in the Juvenile Court. The Trial Court taxed costs to Justice and imposed filing restrictions for a period of 48 months from entry of its judgment, requiring Justice to seek application prior to filing an action against Nelson in the Trial Court. Justice timely appealed.

On July 27, 2023, several months after the Trial Court granted Nelson's ACA motion, this Court reversed the Juvenile Court's ACA order, concluding that "the trial court's findings concerning previous lawsuits brought by Father against Mother's

---

[3] The Trial Court addressed the long delay between the hearing and its entry of judgment: "After the hearing, the file was mistakenly filed in a 'holding' area pending receipt of both December 3, 2021 closing statements. As a result, it was only when the Court was closing files on or about February 2, 2023, that it was confirmed that this Order had not been submitted."

attorneys, health care providers, or Mother's former husband are not 'substantially similar' to Father's 2019 petition for modification" and that "although the issue of modification of visitation and support are common between the petitions, the facts on which modification is sought differ, which negates the trial court's finding of abusive civil lawsuit." *Nelson v. Justice*, No. E2021-01398-COA-R3-JV, 2023 WL 4789024, at *8, 9 (Tenn. Ct. App. July 27, 2023).[4]

## Discussion

Although not stated exactly as such, Justice raises the following issues: (1) whether the Trial Court erred in finding that Justice's action was an abusive civil action; (2) whether the Trial Court erred in finding that the Juvenile Court's ACA order created a rebuttable presumption that Justice was an abusive civil action plaintiff in the present case; (3) whether Justice's voluntary dismissal deprived the Trial Court of jurisdiction to adjudicate Nelson's ACA motion; (4) whether the Trial Court erred by denying Justice the right to depose Nelson;[5] and (5) whether the Trial Court erred in failing to find Tenn. Code Ann. § 29-41-101, *et seq.* unconstitutional.[6]

---

[4] We note that this Court's decision in *Nelson v. Justice*, No. E2021-01398-COA-R3-JV, 2023 WL 4789024 (Tenn. Ct. App. July 27, 2023) does not affect our rejection of Justice's argument that Nelson needed to prove that his complaint was the same or similar to a previous action between the parties. Our previous decision addressed certain provisions of the ACA statutes that required Nelson to prove that the issues litigated in that case had previously been litigated and disposed of unfavorably to Justice, pursuant to Tenn. Code Ann. § 29-41-101(1)(C) and -105(1). These provisions are irrelevant to Nelson's ACA motion in this case.

[5] Justice mischaracterizes the Trial Court's denial of his motion to continue as a denial of his right to depose Nelson. Justice makes the unsupported assertion that the Trial Court's denial of his motion to continue deprived him of "due process" and was "unconstitutional" and "abusive." Besides presenting these assertions, Justice provides no argument and cites no case law in support of these assertions. Tennessee Rule of Appellate Procedure 27(a)(7) provides that an appellant's brief shall contain an argument setting forth his contentions, reasoning, citations to authorities, and references to the record. Justice has not complied with Rule 27 by failing to develop this argument and has accordingly waived this issue. *See Sneed v. Bd. of Prof'l Resp. of Sup. Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010) ("It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived."). We further emphasize that the "granting or denial of a motion for a continuance lies in the sound discretion of the court" and that a ruling on a motion to continue "will not be disturbed unless the record clearly shows abuse of discretion and prejudice to the party seeking a continuance." *Blake v. Plus Mark, Inc.*, 952 S.W.2d 413, 415 (Tenn. 1997). Justice's assertions do not sufficiently demonstrate how the Trial Court abused its discretion in denying his motion to continue, particularly given that he filed his motion to continue the night before the hearing. We accordingly find Justice's argument on this point waived.

[6] Meares Defendants argue that they should not be parties to this appeal given that their motion to dismiss was granted before Nelson filed her ACA motion and that they did not join in Nelson's ACA motion. As a result, they ask that this Court find Justice's appeal frivolous as it relates to them and award

- 6 -

This Court has previously explained the standard of review for abusive civil action suits as follows:

> Our review of that decision requires us to apply a statute to the facts, presenting a mixed question of law and fact, and is thus reviewed de novo, with no presumption of correctness accorded to the trial court's decision. *Lance v. York*, 359 S.W.3d 197, 201 (Tenn. Ct. App. 2011). In this type of review, appellate courts have " 'great latitude to determine whether findings as to mixed questions of fact and law made by the trial court are sustained by probative evidence on appeal.' " *Id.* (quoting *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995)).

*Wilson v. Wilson*, No. M2021-01307-COA-R3-CV, 2022 WL 2963222, at \*5 (Tenn. Ct. App. July 27, 2022).

We first consider Justice's argument that his voluntary dismissal deprived the Trial Court of jurisdiction to consider Nelson's ACA motion. Justice contends that his voluntary dismissal filed on September 28, 2020, deprived the Trial Court of jurisdiction over any "substantive matters and it is as if the suit was never filed in the first place." We disagree.

Tennessee Rule of Civil Procedure 41.01 governs voluntary dismissals and provides in relevant part: "If a counterclaim has been pleaded by a defendant prior to the service upon the defendant of plaintiff's motion to dismiss, the defendant may elect to proceed on such counterclaim in the capacity of a plaintiff." Nelson and Valone Defendants argue that by filing the ACA motion on September 21, 2020, prior to Justice's nonsuit, Nelson effectively filed a counterclaim. We agree.

In deciding whether Nelson's ACA motion constitutes a counterclaim, we begin with the words of the statute. *See In re Conservatorship of Clayton*, 914 S.W.2d 84, 90 (Tenn. Ct. App. 1995) ("Our search for a statute's purpose begins with the words of the statute itself."). Furthermore, "[w]hen a statute is clear, we apply the plain meaning without complicating the task" and "[o]ur obligation is simply to enforce the written language." *In re Estate of Tanner*, 295 S.W.3d 610, 614 (Tenn. 2009). Here, the plain language of the statute is clear, and moreover, it is clear that the right to relief created by the statute constitutes a claim. Tenn. Code Ann. § 29-41-103(a) provides:

---

them costs and attorney's fees pursuant to Tenn. Code Ann. § 27-1-122. We agree that they should not be parties to this appeal but decline to award them costs and attorney's fees. By failing to raise this request for costs and attorney's fees as a separate designated issue, they have waived their request.

(a) If a civil action is filed and the defendant to the action believes it to be an abusive civil action, <u>the claim may be raised</u> by the defendant:

(1) In the answer to the civil action; or

(2) <u>By motion made at any time during the civil action</u>.

(Emphasis added.) The statute clearly refers to an action under the ACA as a claim and provides that a claim may be brought by a motion made at any time during the civil action, which is what Nelson did. It is therefore clear that Nelson pleaded a counterclaim against Justice prior to his nonsuit.

Moreover, to hold otherwise would effectively defeat the purpose of the ACA statutory scheme. In its ruling, the Trial Court rightly noted that "[t]he ability of a possible abusive civil action litigant to voluntarily dismiss a case . . . would circumvent the intent of the legislature to protect individuals from unwarranted, expensive litigation." A plaintiff's act of filing the action is the basis for a defendant's claim under the ACA; nonsuiting does not remedy the harm already done. *See* Tenn. Code Ann. § 29-41-101(1) ("'Abusive civil action' means a civil action <u>filed by a plaintiff</u> against a defendant with whom the plaintiff shares a civil action party relationship primarily to harass or maliciously injure the defendant . . . .") (emphasis added).

We would effectively render the ACA statutory scheme useless and defeat its legislative purpose if we were to permit a plaintiff to avoid the consequences of filing an abusive civil action by simply dismissing the case after a defendant has filed an ACA counterclaim. One effect of the ACA statutory scheme is to provide a battered civil defendant with a momentary respite from an onslaught of civil actions. The ACA statutory scheme would be ineffective if an abusive civil plaintiff could simply file, dismiss, and then refile perpetually, all while evading any consequences provided for by the ACA statutes. We accordingly conclude that the Trial Court retained jurisdiction over the case, and in fact was required to hold an evidentiary hearing on Nelson's ACA motion, given that Nelson brought an ACA claim prior to Justice's voluntary nonsuit. *See* Tenn. Code Ann. § 29-41-104(a) ("If the defendant to a civil action alleges, either by answer to the civil action or by motion made at any time the action is pending, that the action constitutes an abusive civil action and that the person filing the action is an abusive civil action plaintiff, the court shall conduct a hearing to determine the merits of the defendant's allegations.")

Justice presents several arguments for why the Trial Court erred in finding his action abusive, the first being that the complaint was not the "same" or "similar" to any other prior action against Nelson. Justice elaborates:

The so-called "Abusive Civil Action" statute ("Statute"), Tenn. Code Ann. 29-41-101 *et seq.*, requires the subject matter of the alleged "abusive" and prior action be "the same" or "similar" but this case has not much to do with the underlying action, or any other action. That Statute requires the subject matter of the alleged "abusive" and prior action be "the same" or similar, but this case has not much to do with the underlying custody and co-parenting action. Instead, this case focuses on Appellees' execution on a judgment that they knew was stayed in contempt of the stay of execution. . . . It has nothing to do with co-parenting or *ex parte* contact with Judge Ash or psychological testing; it just had to do with whether it is abuse of process to wrongfully register a judgment lien in execution on real property which Appellees knew was stayed – that is not the same, obviously, and not even similar to the subject matter of the underlying suit, or any other suit.

Justice is either intentionally presenting a strawman argument or misinterpreting the ACA statutes. Nelson did not need to demonstrate that the present case was the same or similar to any other previous case. We again return to the words of the statute.

Tenn. Code Ann. § 29-41-101(1) provides the following elements to prove an ACA claim:

(1) "Abusive civil action" means a civil action filed by a plaintiff against a defendant with whom the plaintiff shares a civil action party relationship primarily to harass or maliciously injure the defendant and at least one (1) of the following factors are applicable:

(A) Claims, allegations, and other legal contentions made in the civil action are not warranted by existing law or by a reasonable argument for the extension, modification, or reversal of existing law, or the establishment of new law;

(B) Allegations and other factual contentions made in the civil action are without the existence of evidentiary support; or

(C) Issue or issues that are the basis of the civil action have previously been filed in one (1) or more other courts or jurisdictions by the same, and the actions have been litigated and disposed of unfavorably to the plaintiff[.]

Put differently, a defendant must prove that (1) she shares a civil action party relationship with the plaintiff; (2) the plaintiff has filed a civil action primarily to harass or maliciously injure her; and (3) either (A) claims or allegations are not warranted by existing law or reasonable argument for modifying existing law or the establishment of

new law; (B) allegations are without evidentiary support; or (C) the issue or issues have already been filed, litigated, and disposed of unfavorably to the plaintiff. The defendant must prove these elements by a preponderance of the evidence. *See* Tenn. Code Ann. § 29-41-106(a) ("If the court finds by a preponderance of the evidence that a person filing a civil action is an abusive civil action plaintiff, and that any or all civil actions filed by the abusive civil action plaintiff against the abusive civil action defendant that are pending before the court are abusive civil actions, the civil actions shall be dismissed.").

Contrary to Justice's argument, the similarity of the issues in the present complaint to issues in his previous complaints against Nelson matter only under subsection (1)(C). A defendant may prove that a plaintiff and his complaint are abusive by proceeding under theories in subsection (1)(A) and (B), neither of which have anything to do with whether there has been a "same" or "similar" case prior to the alleged abusive action. In fact, the only reference to the phrase "same or substantially similar" appears in Tenn. Code Ann. § 29-41-105(1)-(3), which provide three of four possible ways to create a rebuttable presumption that the action is abusive. Nelson did not proceed under these theories to establish the rebuttable presumption, and they are accordingly irrelevant to our analysis, as they were to the Trial Court's. We therefore reject Justice's argument that Nelson was required to prove that the present action was the same or similar to a previous action between the two parties.

Justice also argues that the Trial Court erred by finding that Nelson established the rebuttable presumption, pursuant to Tenn. Code Ann. § 29-41-105(4), based upon the Juvenile Court's ACA order finding Justice's petition for modification of child support and visitation abusive. Justice rightly points out that the Juvenile Court's ACA order was not a final, non-appealable order at the time the Trial Court relied upon it and that the ACA order eventually was reversed by this Court on July 27, 2023. *See Nelson v. Justice*, No. E2021-01398-COA-R3-JV, 2023 WL 4789024, at *9 (Tenn. Ct. App. July 27, 2023).

Nelson and Valone Defendants counter that Justice did not raise "the matter of whether the Roane County Juvenile Court order had been or would be appealed" and never objected to or otherwise contested their argument that Nelson was entitled to the rebuttable presumption under Tenn. Code Ann. § 29-41-105(4). Although Justice did not notify the Trial Court that he was appealing or planned to appeal the Juvenile Court's ACA order, Justice did object to the order's entry into evidence based upon its noncompliance with Tennessee Rule of Civil Procedure 58. At the evidentiary hearing, Justice argued that the Juvenile Court's ACA order was ineffective and non-final. We therefore cannot agree that this argument has been waived.

Nevertheless, Nelson presented more than sufficient evidence even without consideration of the presumption that Justice's complaint was meritless and filed with the intent to harass her, and we accordingly affirm the Trial Court, despite its reliance on the

non-final Juvenile Court order. *See Arnold v. City of Chattanooga*, 19 S.W.3d 779, 789 (Tenn. Ct. App. 1999) ("Where the Trial Judge reaches the correct result for the wrong reason we will affirm."). Returning to the elements, Nelson needed to prove by a preponderance of the evidence that (1) she shares a civil action party relationship with Justice; (2) Justice filed the action primarily to harass or maliciously injure her; and (3) either (A) Justice's claims were not warranted by existing law or reasonable argument for modifying existing law or the establishment of new law; (B) his allegations were without evidentiary support; or (C) the issue or issues have already been filed, litigated, and disposed of unfavorably to Justice. The first element, that Nelson and Justice share a civil action party relationship, is uncontested and established by the child they share together. *See* Tenn. Code Ann. § 29-41-101(5)(C) ("Adults who are dating or who have dated or who have or had a sexual relationship."). Nelson further presented sufficient evidence that Justice filed the action primarily to harass or maliciously injure her and that his claims were unwarranted by existing law under Tenn. Code Ann. § 29-41-101(1)(A).

Tenn. Code Ann. § 29-41-101(6) provides the definition for "harass or maliciously injure" as follows:

> (6) "Harass or maliciously injure" means the civil action determined to be an abusive civil action was filed with the intent or was primarily designed to:
>
> (A) Exhaust, deplete, impair, or adversely impact the civil action defendant's financial resources unless:
>
>> (i) Punitive damages are requested and appropriate; or
>>
>> (ii) A change in the circumstances of the parties provides a good faith basis to seek a change to a financial award, support, or distribution of resources;
>
> (B) Prevent or interfere with the ability of the civil action defendant to raise a child or children for whom the civil action defendant has legal custody in the manner the civil action defendant deems appropriate unless the civil action plaintiff has a lawful right to interfere and a good faith basis for doing so;
>
> (C) Force, coerce, or attempt to force or coerce the civil action defendant to agree to or make adverse concessions concerning financial, custodial, support, or other issues when the issues in question have been previously litigated and decided in favor of the civil action defendant;

(D) Force, coerce, or attempt to force or coerce the civil action defendant to alter, engage in, or refrain from engaging in conduct when the conduct is lawful and is conduct in which the civil action defendant has the right to engage;

(E) Impair, or attempt to impair the health or well-being of the civil action defendant or a dependent of the civil action defendant;

(F) Prevent, interfere, or adversely impact the ability of the civil action defendant to pursue or maintain a livelihood or lifestyle at the same or better standard as the civil action defendant enjoyed prior to the filing of the action primarily for the purpose of harassing or maliciously injuring the civil action defendant; or

(G) Impair, diminish, or tarnish the civil action defendant's reputation in the community or alienate the civil action defendant's friends, colleagues, attorneys, or professional associates by subjecting parties without knowledge of or not reasonably relevant to the civil action to unreasonably or unnecessarily complex, lengthy, or intrusive interrogatories or depositions.

Nelson and Valone Defendants argue that Nelson sufficiently proved that Justice filed the instant action with the intent to harass or maliciously injure as defined by (A), (D), and (E). We agree that there was sufficient evidence demonstrating that Justice filed his complaint to harass or maliciously injure Nelson.

The Trial Court found the following facts relevant to Justice's intent to harass or maliciously injure Nelson:

Plaintiff Justice and Defendant Nelson have been involved in litigation since 2004. The Honorable Don Ash heard the original parentage action and issued an order in or about April 2017 after 21 intermittent days of trial. In addition to entering a parenting plan, Judge Ash made explicit findings in the 2017 order that Plaintiff Loring Justice "exhibited a pattern of manipulation, overcontrolling and bullying in his life" and threatened to "break Ms. Nelson financially".

\* \* \*

Only one witness was called: Cecelia Peterson[7] for Defendant Nelson. The Court admitted 29 exhibits detailing the litigation history between the parties and those associated with Defendant Nelson. The exhibits also reflect a minimum of $400,000.00 in legal fees and expenses incurred by Defendant Nelson, numerous lawsuits and appeals in state and federal court impacting not only Defendant Nelson but those involved in her representation, personal life and/or presentation of her case(s).

Ms. Peterson, who the Court finds credible, testified in detail about her experience with Plaintiff Justice and the litigious history of the parties. Through testimony she established a pattern for these parties of a tumultuous relationship from the time this litigation began regarding parentage in 2004 (filed approximately 7 months before the child's birth) through the date of this hearing. Her testimony established a foundation of knowledge based on her review of all transcripts before becoming involved in the appeal through her continued work with Defendant Nelson and being personally sued by Plaintiff Justice, though the same was later dismissed. The litigation with these parties began as a relatively straight forward proceeding: one to establish parentage, a parenting schedule and support. The fact that it spanned over 17 years, with regular appellate review of rulings unfavorable to Plaintiff Justice, filings and dismissals in federal court and unsuccessful litigation against those representing/being employed by Defendant Nelson, is evidence of the Plaintiff's use/abuse of the court system. Plaintiff Justice's failure to appear at this hearing results in the court[']s inability to make a favorable credibility determination as to his intentions or basis for the most recently filed litigation.

The evidence does not preponderate against these findings and, furthermore, demonstrates by a preponderance of the evidence that Justice filed the instant action to harass or maliciously injure Nelson. We find the fact that another court previously determined that Justice had used litigation to financially ruin Nelson particularly relevant. As the Trial Court noted, Nelson's and Justice's legal battle began in 2004 when Nelson filed a parentage action against Justice in the Juvenile Court, which, as Petersen testified, "erupted into a lava flow of other lawsuits." The paternity and custody action culminated in an order entered by the Juvenile Court on April 11, 2017. In that order, the Juvenile Court found that Justice had "intentionally manipulated this litigation in an attempt to 'financially ruin'" Nelson and accordingly awarded Nelson $376,638.90 in attorney's fees. The Juvenile Court further found that Justice had "exhibited a pattern of manipulation, over-controlling and bullying in his life."

---

[7] Although Petersen's name sometimes appears in the record as "Cecelia Peterson," we spell her name as she spelled it during the ACA hearing and how it appears on filings.

- 13 -

In another order from April 11, 2017, the Juvenile Court denied Justice's recusal motion and found: "[I]t is the strategy of Mr. Justice and Mr. Rickman [Justice's former counsel], Officers of the Court, to slander, harass, bully and attempt to manipulate this Court to such an extent this Court will simply throw its hands up and walk away; they are mistaken." The Juvenile Court denied his recusal motion and found that it was brought for the "improper purposes of harassment, delay and to needlessly increase litigation costs." According to Petersen, Justice "pretty much moved for every judge to be recused at one time or another" and filed three motions to recuse Judge Ash.

The Juvenile Court further awarded Nelson $45,238.85 in discretionary costs in an order entered on July 24, 2017, which this Court later affirmed. *See Nelson v. Justice*, No. E2017-01546-COA-R3-JV, 2019 WL 338940, at *3 (Tenn. Ct. App. Jan. 25, 2019). In doing so, the Juvenile Court found: "[Nelson's] Motion for Discretionary Costs is not brought for any improper purpose; it is brought to recoup costly expert witness and court reporter fees increased, to a great extent, by [Justice's] conduct throughout the protracted litigation."

Petersen testified that Justice filed "at least eight separate actions all out of the parentage action" against Nelson. She also stated that Justice had sued each of Nelson's four attorneys three or four times.[8] Petersen was the only person to testify and the Trial Court found her to be credible. We defer to the Trial Court's credibility determination as we find no evidence sufficient for us to question this determination.

The foregoing testimony and Juvenile Court orders, demonstrating Justice's past abusive litigation practices against Nelson, coupled with the baselessness of his complaint in the current action, are evidence of Justice's intent to harass or maliciously injure Nelson. Significantly, Justice maintained this action against Nelson even after the Trial Court granted Meares Defendants' and Valone's motions to dismiss and rejected his legal theory in August and September 2020 and after the Juvenile Court rejected the same argument in February 2020. Despite two different courts rejecting his legal theory of wrongful execution, Justice did not dismiss his action until after Nelson filed her ACA motion. Justice's persistence, despite two different courts soundly rejecting his legal theory, is evidence that his motivation for filing and maintaining the action against Nelson was improper. The present action is the latest in an onslaught of actions initiated by Justice against Nelson, which we can only reasonably conclude was designed to deplete Nelson's financial resources and impair her well-being, or, in other words, harass her by filing.

---

[8] Justice also argues that the Trial Court erred by considering complaints he filed against persons closely associated with Nelson, such as her attorneys. We disagree, insofar as complaints filed against Nelson's attorneys are evidence of his intent to harass or maliciously injure her by negatively affecting her legal team.

- 14 -

As for the third element, we conclude that Nelson presented sufficient proof that Justice's claims, allegations, and other legal contentions were not warranted by existing law or by a reasonable argument for the extension, modification, or reversal of existing law, or the establishment of new law, pursuant to Tenn. Code Ann. § 29-41-101(1)(A). The basis for Justice's claims included the following facts:

The trial court awarded judgment against Plaintiff on or about April 11, 2017.

Post-judgment, after proper proceedings, Plaintiff posted a supersedeas or appeal bond ["the bond" or "bond"] to secure Plaintiff and her attorneys [Meares and Valone] because some of the judgment was for attorneys' fees, pending appeal.

Plaintiff posted a supersedeas or appeal bond under an Order related to Plaintiff's motion for stay.

By virtue of the bond, execution on the trial court judgment was stayed.

Nonetheless, after the proceedings for stay and after the Order for stay and the Plaintiff obtaining the bond, the Defendants conspired to and did execute on the judgment in contravention of the bond order.

Defendants executed on the trial court judgment in contempt of the bond Order on June 21, 2017 by filing a judgment lien on Plaintiff's property in Knox County, located at 500 Prescott Way, Knoxville, Tennessee 37919.

(Paragraph numbering omitted.)

Three courts have rejected Justice's argument that filing a judgment lien while a stay order is in place constitutes wrongful execution. In February 2020, the Juvenile Court entered an order denying Justice's motion to alter or amend its order "granting judgment of bond" and rejecting Justice's wrongful execution theory. The Juvenile Court explained:

This is a very simple issue. Plaintiff Nelson obtained a judgment for attorney fees against Defendant Justice. The trial court ordered Defendant to post an appeal bond to stay the execution of the judgment pending appeal. Defendant lost on appeal and has not paid the judgment. The Plaintiff moved the Court to order The Guarantee Company to pay the judgment in accordance with the bond. The Court granted the motion, and also ordered Defendant to reimburse The Guarantee Company in

- 15 -

accordance with the bond.[9]  Defendant now argues that the bond is void and that he has no obligation to make payments.  He makes several nonsensical arguments, none of which have merit.

First, Defendant argues that because he never received the stay he was entitled to by the Stay Order, there was no bargained-for-exchange; i.e., consideration.  Although Defendant's first argument is captioned "Consideration," nowhere within that paragraph does Defendant cite the doctrine of consideration, explain the doctrine's meaning, and most importantly, analyze how consideration specifically ties into his argument that the Court should alter and amend its Order.  Instead of providing the Court with coherent legal analysis, Defendant repeats a series of conclusory statements, and cites to cases without explaining their significance or relevance to the issue at hand.  The Defendant even admits that "there is probably not an abundance of law on this issue because, by logic, most rational persons secured by a stay of execution bond do not void their security by committing contempt of the stay Order."  Defendant's failure to cite legal authority and provide cogent analysis is one of the main reasons the Court denies the Motion.

Furthermore, even if Defendant fully analyzed how consideration, in this case — the Stay Order — somehow ended up voiding the bond, that conclusion would be wrong.  This is because <u>the Stay Order was never violated in the first place.  Filing a copy of the Court judgment in the Knox County Register of Deeds does not violate the Court's Stay Order nor does it amount to contempt of court.</u>  However, even if the filing was contemptuous, such conduct would not void the bond.  There is no rational basis in law or fact to support the argument that filing a judgment lien voids or negates an appeals bond.  The Court finds Defendant's first argument without merit.

(Emphasis added.)  This Court affirmed the Juvenile Court's reasoning in *Nelson v. Justice*, No. E2020-00287-COA-R3-CV, 2021 WL 870736, at *3 (Tenn. Ct. App. Mar. 9, 2021).  The Trial Court also granted Meares Defendants' and Valone's motions to

---

[9]  At the ACA hearing, Petersen acknowledged that the bonding company paid Nelson her attorney's fees award around the time the Juvenile Court entered the February 2020 order.  However, this in no way impacts our decision, given that the basis of Nelson's ACA motion was Justice's complaint alleging wrongful execution.  The question before us is whether Justice's legal theory that filing a judgment lien during a court-ordered stay constitutes wrongful execution, not whether Nelson should have removed the lien after finally being paid by the bonding company, several months after Justice filed his complaint.  The fact that Nelson was later paid by the bonding company after Justice had exhausted his appeals of the Juvenile Court's attorney's fees award does not alter the fact that Justice alleged a baseless claim of wrongful execution.

- 16 -

dismiss for the same reason: filing a judgment lien does not constitute execution of a judgment. Although all three of these decisions were released after Justice initially filed his complaint, these decisions simply reflect what should have been clear to Justice before he ever filed his complaint—filing a judgment lien during a stay order does not constitute wrongful execution.

On appeal, Justice argues that his complaint was not baseless but rather a "debatable question." He cites no Tennessee law to explain why it is a debatable question. This Court has previously explained the difference between recordation of a judgment lien and execution:

> A judgment obtained in Tennessee becomes a lien on the debtor's real property when the judgment is recorded in the register's office of the county where the land is located. *See* Tenn. Code Ann. § 25-5-101(b) (Supp.1997). Upon proper recordation, the judgment also becomes effective against any person having or later acquiring an interest in the debtor's real property regardless of whether that person was a party to the action resulting in the judgment. *See* Tenn. Code Ann. § 25-5-101(c) (Supp.1997); Tenn. Code Ann. § 66-24-119 (1993). The judgment creditor must execute upon the lien within three years of the entry of the judgment. *See* Tenn. Code Ann. § 25-5-105(a) (Supp.1997).[10]

*ATS, Inc. v. Kent*, 27 S.W.3d 923, 924 (Tenn. Ct. App. 1998). Recordation of a judgment lien precedes execution. As Nelson and Valone Defendants point out, recording a judgment is "no more an execution than recording a deed of trust is a foreclosure."

Furthermore, this Court affirmed the Juvenile Court's judgment awarding Nelson $376,638.90 in attorney's fees on January 25, 2019, six months before Justice filed his complaint alleging wrongful execution. *See Nelson v. Justice*, No. E2017-00895-COA-R3-CV, 2019 WL 337040, at *27 (Tenn. Ct. App. Jan. 25, 2019) ("We affirm the award of attorney fees."). And the Tennessee Supreme Court denied Justice's application for permission to appeal this decision in September 2019, only a few months after he filed his complaint. We therefore fail to discern the basis for Justice's grievance, given that this judgment was affirmed by this Court before he ever brought this action, or, at the very least, why he maintained this action after his appeal had been exhausted in September 2019.

We accordingly conclude that Justice's claims, allegations, and other legal contentions were not warranted by existing law or by a reasonable argument for the extension, modification, or reversal of existing law, or the establishment of new law, thereby establishing the third element under Tenn. Code Ann. § 29-41-101(1)(A).

---

[10] As the statute reads today, a judgment creditor now has ten years to execute upon a judgment lien.

Justice also argues that the ACA statutory scheme is unconstitutional because it is a bill of attainder, *ex post facto* law, and violation of the separation of powers between the legislative and judicial branches. He also contends that the statutory scheme requires unequal treatment of litigants. None of Justice's arguments are convincing.

Justice contends that the ACA statutory scheme constitutes a bill of attainder insofar as they were purportedly passed at Nelson's behest. The only evidence cited in this regard is Exhibit 30, a transcript of the Juvenile Court's ACA hearing in which Nelson purportedly testified that "the Statute was passed at her behest to address the underlying legal case and she was the only witness to testify in support of it." We first note that Exhibit 30 is not in the record, and we therefore cannot verify Justice's allegation. *See McAllister v. Rash*, No. E2014-01283-COA-R3-CV, 2015 WL 3533679, at *8 (Tenn. Ct. App. June 5, 2015) ("It is well-settled that it is the appellant's duty to prepare a record for our review that includes everything contained in the trial court record that is necessary for our examination of the issues presented on appeal."). Nevertheless, even if we were to presume the exhibit reflected what Justice asserts, this would not prove that the ACA statutory scheme is a bill of attainder.

"A 'Bill of Attainder' is a legislative act which inflicts punishment without a judicial trial, 'where the legislative body exercises the office of judge, and assumes judicial magistracy, and pronounces on the guilt of a party without any of the forms or safeguards of a trial and fixes the punishment.'" *Cox v. State*, 439 S.W.2d 267, 270 (Tenn. 1969) (citation omitted). "[A] law is prohibited under the bill of attainder clause 'if it (1) applies with specificity, and (2) imposes punishment.'" *Foretich v. United States*, 351 F.3d 1198, 1217 (D.C. Cir. 2003) (citation omitted). "The element of specificity may be satisfied if the statute singles out a person or class by name or applies to 'easily ascertainable members of a group.'" *Id.* (citation omitted). Here, the ACA statues certainly do not single out Justice by name, and they do not apply to such a narrow set of circumstances or behavior as to apply only to him. The statutes apply to persons in a "civil action party relationship", which includes six different classes of relationships, and further apply only to situations in which the plaintiff has filed a baseless suit to harass or maliciously injure the defendant. *See* Tenn. Code Ann. § 29-41-101. The fact that Justice fits the description of an abusive civil action plaintiff does not mean the statute is so narrowly tailored so as to target him. We reject his argument that the ACA statutory scheme constitutes a bill of attainder.

Justice's argument that the ACA statutory scheme is an *ex post facto* law is similar. He argues: "the Statute is clearly a violation of the *ex post facto* clause because it is punitive in nature"; it "imposes penalties based on cases filed and litigated long before the Statute was passed"; and the "Statute was passed to help [Nelson] and to target [Justice] for punishment." Justice again references Exhibit 30 regarding Nelson's testimony that she asked the Legislature to pass the ACA statutes for her benefit. We

emphasize: "To constitute a violation of the prohibition against *ex post facto* laws, 'a law must be retrospective—that is, it must apply to events occurring before its enactment—and it must disadvantage the offender affected by it, . . . by altering the definition of criminal conduct or increasing the punishment for the crime . . . .'" *Walker v. Tenn. Bd. of Parole*, No. M2023-00219-COA-R3-CV, 2023 WL 7219241, at *8 (Tenn. Ct. App. Nov. 2, 2023) (citation omitted). Justice entirely fails to explain how the ACA statutes were applied retroactively to past filings in this case. Justice's complaint was filed on July 25, 2019, a full year after the ACA statutes were enacted on July 1, 2018. We accordingly reject his argument.

Justice next contends that the ACA statutes violate the separation of powers doctrine, claiming that they alter Tennessee Rule of Civil Procedure 11. According to Justice, the statute "affects the mechanisms by which litigants access the courts." Justice, again, offers this Court a series of assertions without explanation. Justice has failed to direct us to a single example of how the ACA statutes conflict with Rule 11, and as we have already admonished, it is not our role to construct Justice's arguments for him. *See Sneed v. Bd. of Prof'l Resp. of Sup. Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010) ("It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived."). Moreover, the ACA statutes create a cause of action, as we have already discussed; therefore, these statutes appear to be substantive in nature rather than procedural and are within the purview of the Legislature's authority. *See Willeford v. Klepper*, 597 S.W.3d 454, 466 (Tenn. 2020) ("If a statute is clearly substantive and operates in an area of legitimate legislative concern, this Court will not hold that it constitutes an unconstitutional encroachment on the judicial branch. However, where a statute does *not* basically convey substantive rights, the procedural aspects of the statute cannot be deemed 'incidental,' and that statute is unconstitutional.") (quoting *Massey v. David*, 979 So.2d 931, 937 (Fla. 2008)).

To the extent Justice argues that the ACA statutes impermissibly limit access to the courts, we reject this contention. Despite Justice's claim that the ACA statutes deprive an abusive civil action plaintiff of "even the ability to plead or conduct discovery", Tenn. Code Ann. § 29-41-107 outlines a procedure by which an abusive civil action plaintiff may "seek permission to file a civil action using the procedure set out in subsection (c)." Tenn. Code Ann. § 29-41-107(b). Tenn. Code Ann. § 29-41-107(c) provides:

> (1) An abusive civil action plaintiff against whom prefiling restrictions have been imposed pursuant to this chapter who wishes to institute a civil action in a court of record during the time the abusive civil action plaintiff is under filing restrictions must first appear before the judge who imposed

the prefiling restrictions to make application for permission to institute the civil action.

(2)(A) The judge may examine witnesses, including the abusive civil action plaintiff and the civil action defendant, to determine if the proposed civil action is or is not an abusive civil action and if there are reasonable and legitimate grounds upon which the complaint is based.

(B) There is a rebuttable presumption that any proposed civil action is an abusive civil action if any of the defendants in the proposed action were civil action defendants in one (1) or more of the actions that were the basis for the person being declared an abusive civil action plaintiff.

(3)(A) If the judge who imposed the prefiling restrictions believes that the civil action the abusive civil action plaintiff is making application to file will be an abusive civil action, the application shall be denied and the judge shall determine a time when the person may next make application to file a civil action.

(B) If the judge reasonably believes that the civil action the abusive civil action plaintiff is making application to file will not be an abusive civil action, the judge may grant the application and issue an order permitting the filing of the civil action. The order shall be attached to the front of the complaint when the abusive civil action plaintiff files the civil action with the clerk. The defendant to the action shall be served with a copy of the order at the same time the complaint is served.

(4) The findings of the judge shall be reduced to writing and made a part of record in the matter. If the abusive civil action plaintiff disputes the finding of the judge, the abusive civil action plaintiff may appeal to the presiding judge of the judicial district of the sanctioning judge. If the sanctioning judge is the presiding judge, the presiding judge shall randomly select two (2) other judges of courts of record in the judicial district to review the findings of the sanctioning judge. If there are not two (2) other judges in the judicial district available, the presiding judge may select a judge from an adjoining judicial district to review the findings. If the presiding judge or both reviewing other judges believe that the civil action the person is making application to file is not an abusive civil action, the findings of the sanctioning judge are overruled and both judges shall sign an order permitting the filing of the action. The order shall be entered and attached to the complaint and the defendant shall be served with a copy of the order at the same time the complaint is served.

Based upon Tenn. Code Ann. § 29-41-107(c), we do not agree with Justice's assertion that the ACA statutes impermissibly restrict an abusive civil action plaintiff's access to the courts. Not only does § 29-41-107(c) provide a process for an abusive civil action plaintiff to seek permission from the sanctioning judge to file a complaint, but it also provides that the sanctioning judge may examine witnesses and shall reduce its findings to writing. The statute even provides a mechanism for an abusive civil action plaintiff to appeal the judge's ruling if the judge finds that the proposed action is abusive. We accordingly reject Justice's claim that the statutory scheme impermissibly restricts an abusive civil action plaintiff's access to the courts.

Lastly, Justice argues that Tenn. Code Ann. § 29-41-106 is "distorted and requires unequal treatment of litigants, which is unconstitutional."[11] Justice cites no law in support of his argument, and we accordingly conclude that he has waived this argument. *Sneed*, 301 S.W.3d at 615 ("It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived."). For the foregoing reasons, we affirm the Trial Court, discerning no valid argument presented to us by Justice for ruling the ACA statutes unconstitutional.

## Conclusion

Based upon our review, we affirm the Trial Court's judgment, albeit for somewhat different reasons. This cause is remanded for collection of costs below. The costs on appeal are assessed against the appellant, Loring E. Justice, and his surety, if any.

_____
D. MICHAEL SWINEY, CHIEF JUDGE

---

[11] This is a "conclusion" rather than an "argument."